## STATE v. CLYDE BROWN.

(Filed 2 February, 1951.)

**1. Grand Jury § 1: Jury § 8—**

The fact that the county commissioners in selecting the jury list used only the tax returns for the preceding year without a list of names of persons not appearing thereon who were residents of the county and over twenty-one years of age, as stipulated by the amendment to G.S. 9-1, does not sustain defendant's contention that the list was not selected from the

legally prescribed source, since the provisions of the statute are directory and not mandatory.

**2. Same: Constitutional Law § 33—**

The fact that the county commissioners in selecting the jury list used only the tax returns for the preceding year without a list of names of persons not appearing thereon who were residents of the county and over twenty-one years of age, as stipulated by the amendment to G.S. 9-1, does not tend to show racial discrimination in the selection of prospective jurors, and defendant's objection on this ground cannot be sustained in the absence of any evidence tending to show prejudice, bad faith, or the inclusion or exclusion of persons from the list because of race.

**3. Same—**

The intentional, arbitrary and systematic exclusion or inclusion of any portion of the population from jury service, grand or petit, on account of race, color, creed, or national origin, is at variance with the fundamental law and cannot stand.

**4. Same—**

A defendant does not have the right to be tried by a jury of his own race, or to have a representative of any particular race on the jury, or to have any proportional representation of the races thereon, but he is entitled to be tried by a jury from which there has been neither inclusion nor exclusion because of race.

**5. Criminal Law § 56—**

A motion in arrest of judgment is inappropriate to present the contention that the jury list was not selected from the legally prescribed source, since the matters sought to be challenged are not apparent on the face of the record.

**6. Criminal Law § 33—**

That defendant is under arrest, held without warrant, or in custody at the time of making a confession, singly or collectively, does not render the confession involuntary as a matter of law unless the circumstances amount to coercion.

**7. Same—**

A free and voluntary confession is admissible in evidence against the one making it, but a confession wrung from the mind by the flattery of hope or the torture of fear is incompetent. A confession is voluntary in law when, and only when, it is in fact voluntarily made.

**8. Same—**

Where the trial court's ruling that the defendant's confession is voluntary and competent is supported by defendant's own testimony on the preliminary hearing, defendant's contention of error in its admission is untenable.

**9. Criminal Law § 79—**

Exceptions not brought forward in defendant's brief and in support of which no argument is advanced or authority cited, are deemed abandoned. Rule of Practice in the Supreme Court 28.

APPEAL by defendant from *Moore, J.,* September Term, 1950, of FORSYTH.

Criminal prosecution on indictment charging the defendant with rape upon one Betty Jane Clifton, a female.

On the morning of 16 June, 1950, between 8:00 a.m. and noon, some man entered the radio shop of Thomas E. Clifton on West Seventh Street, Winston-Salem, N. C., found Betty Jane Clifton, 16 or 17-year-old daughter of the proprietor alone in charge, assaulted her in a cruel and fiendish manner, raped her, and left her in a helpless condition. She was found unconscious by her father when he came into the shop around 12 o'clock.

The defendant was arrested on suspicion and held for investigation. He told various stories of his whereabouts on the morning in question. These were checked by the officers and found to be false. Finally the defendant sent for the officers of his own accord and confessed to them that he went into the radio shop, assaulted, beat and raped Betty Jane Clifton.

The defendant was indicted, tried, convicted and sentenced as the law commands in such case. The details of the crime are omitted as they are not material on the questions raised by the appeal.

Before pleading to the bill of indictment the defendant moved to quash the indictment on the ground of jury defect in the grand jury which returned a true bill in the case. The alleged defects were that the grand jury was "unlawfully constituted" in violation of defendant's constitutional rights; and further that it was drawn with a view of "limiting representation thereon of Negroes or persons of African descent."

On the hearing of the motion to quash, nothing was said about the failure of the Commissioners to comply with what is now called the "mandatory provisions" of G.S. 9-1 in selecting the jury list from which the grand jury was drawn, and not until the case was tried and the defendant found guilty did counsel advance this contention of jury defect. Thus he now seeks to bring this forward on what he says is a motion in arrest of judgment. Both motions—the one to quash and the other in arrest of judgment—were overruled. Exceptions.

The defendant also contended on the trial that his confession was involuntary, and should have been excluded. Exception.

Verdict: Guilty as charged in the bill of indictment.

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Hosea V. Price and Harold T. Epps for defendant.*

STACY, C. J.  Putting aside any consideration of formal matters, which are not without substance, however, the only real questions sought to be presented on the appeal are : first, whether the jury list was selected from the legally prescribed source ; and, secondly, whether the defendant's confession was voluntary.

*First. The Jury List.*  Prior to 1947, it was provided by G.S. 9-1 that the tax returns of the preceding year for the county should constitute the source from which the jury list should be drawn, and this was then the only prescribed source.  To meet the constitutional change of the previous election making women eligible to serve on juries, the statute was amended in 1947 enlarging the source to include not only the tax returns of the preceding year but also "a list of names of persons who do not appear upon the tax lists, who are residents of the county and over twenty-one years of age," to be prepared in each county by the Clerk of the Board of Commissioners.

It was made to appear on the hearing that the Commissioners used only the tax returns of the county for the preceding year in selecting the jury list for the September Term, 1950, Forsyth Superior Court, from which the grand jury was drawn that performed the accusation against the defendant.  This circumstance, the defendant contends, resulted in discrimination against Negroes or jurors of African descent, the race to which he belongs.  The conclusion, it seems to us, is far-fetched and clearly a *non sequitur.*  It rests only in imagination or conjecture.  The defendant must show prejudice, other than guess or surmise, before any relief could be granted on such gossamer or attenuate ground.  There was no challenge to any member of the jury, grand or petit, and no suggestion that any was disqualified.  Indeed, the trial court was at pains to see that every opportunity was afforded for the selection of a fair and impartial jury.

Negroes were neither excluded nor discriminated against in the selection of either the grand or petit jury which performed in this case.  One Negro woman served on the grand jury and at least one prospective Negro juror was tendered to the defendant for the petit jury and was excused or rejected by his counsel.  It has been the consistent holding in this jurisdiction, certainly since the case of *S. v. Peoples,* 131 N.C. 784, 42 S.E. 814, that the intentional, arbitrary and systematic exclusion of any portion of the population from jury service, grand or petit, on account of race, color, creed, or national origin, is at variance with the fundamental law and cannot stand.  On the other hand, it has also been the holding with us, consistent with the national authorities, *Akins v. Texas,* 325 U.S. 398, 89 L. Ed. 1692, that it is not the right of any party to be tried by a jury of his own race, or to have a representative of any particular race on the jury.  It is his right, however, to be tried by a

competent jury from which members of his race have not been unlawfully excluded. *S. v. Speller,* 231 N.C. 549, 57 S.E. 2d 759; *S. v. Koritz,* 227 N.C. 552, 43 S.E. 2d 77; *Ballard v. U. S.,* 329 U.S. 187, 91 L. Ed. 181. No such exclusion appears here. "The law not only guarantees the right of trial by jury, but also the right of trial by a proper jury; that is to say, a jury possessing the qualifications contemplated by law," and in the selection of which there has been neither inclusion nor exclusion because of race. *Hinton v. Hinton,* 196 N.C. 341, 145 S.E. 615; *Cassell v. Texas,* 339 U.S. 282.

Whatever may be the holdings in other jurisdictions, it is thoroughly settled by our decisions that the provisions of the statute now in focus are directory, and not mandatory, in the absence of proof of bad faith or corruption on the part of the officers charged with the duty of selecting the jury list. *S. v. Mallard,* 184 N.C. 667, 114 S.E. 17, and cases there cited. Not only has no bad faith or corruption been shown on the part of the officers here, but none has so much as been suggested. *S. v. Smarr,* 121 N.C. 669, 28 S.E. 549. Hence, the motions to quash and in arrest were properly overruled. It may be added, also, that the motion in arrest was inappropriate for defendant's present purpose, as the matters sought to be challenged are not apparent on the face of the record. *S. v. Sawyer, ante,* 76, 62 S.E. 2d 515; *S. v. McKnight,* 196 N.C. 259, 145 S.E. 281, and cases there cited.

Finally, and in conclusion of this phase of the case, it may be said the defendant has shown no error affecting any of his substantial rights. He has pointed out no racial discrimination in the selection of the jury list, the grand jury or the petit jury which considered the indictment against him. Nor does he specifically so contend. He only says or suggests that there might have been discrimination against his race. He concedes that neither equal nor proportional representation of race is a constitutional requisite in the selection of juries. *Akins v. Texas, supra.* Indeed, proportional racial limitation is actually forbidden. *Cassell v. Texas, supra.* The defendant's position is one of possible discrimination, not one of racial imbalance in jury composition. A person accused of crime is entitled to have the charges against him performed by a jury in the selection of which there has been neither inclusion nor exclusion because of race. *Cassell v. Texas, supra.* This, the defendant has had in respect of both the grand and petit juries which performed in the case, or, at least, the contrary in respect of neither has been made to appear on the record. Hence, his claim of jury defect or irregularity is unavailing.

*Second. The Defendant's Confession.* The only basis of challenge to the competency of defendant's confession is that he was under arrest, being held without warrant, and was in custody at the time it was given. These circumstances, taken singly or all together, unless they amounted

to coercion, were not sufficient in and of themselves to render a confession, otherwise voluntary, involuntary as a matter of law and incompetent as evidence. *S. v. Stefanoff,* 206 N.C. 443, 174 S.E. 411; *S. v. Gray,* 192 N.C. 594, 135 S.E. 535; *S. v. Thompson,* 224 N.C. 661, 32 S.E. 2d 24; *S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84; *S. v. Speller,* 230 N.C. 345, 53 S.E. 2d 294; *S. v. Brown,* 231 N.C. 152, 56 S.E. 2d 441.

After a preliminary investigation, pursuant to the procedure outlined in *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603, the trial court ruled the confession to be voluntary, and permitted the solicitor to offer it in evidence against the prisoner. *S. v. Grass,* 223 N.C. 31, 25 S.E. 2d 193; *S. v. Hammond,* 229 N.C. 108, 47 S.E. 2d 704. The ruling is fully supported by the evidence, as witness especially the following questions propounded by the court and the answers of the defendant:

"Q. Clyde, let me ask you a question. From the time you were put in custody on the 19th of June, up until after Mr. Price was employed, came over there to the jail to see you, after you made all the statements you made in this case, were you ever mistreated in any manner by these officers, any of the officers? A. No.

"Q. Was any violence used or threatened to be used against you? A. No sir.

"Q. Did anybody hit you or threaten to hit you? A. No sir.

"Q. Did anybody threaten to do you any physical injury of any kind? A. No. sir.

"Q. Did anybody offer you any reward or hope of reward to make any statement? A. No sir.

"Q. Did anybody tell you that you'd get out lighter, they'd try to help you get out lighter if you'd make a statement? A. No.

"Q. And were you, at different times—at least on two occasions, I believe you said—warned that you did not have to make a statement? A. Yes sir.

"Q. You were warned at least once before you made this final statement? Is that correct? A. Yes sir.

"Q. At that time you were told that any statements which you might make would be used against you? A. Yes sir."

It is well understood that a free and voluntary confession is admissible in evidence against the one making it, because it is presumed to flow from a strong sense of guilt or from a love of the truth, both of which are, at times, compelling motives and powerful aids in the investigation of crimes. Just the reverse is true, however, in the case of an involuntary confession, since a statement wrung from the mind by the flattery of hope or by the torture of fear, comes in such questionable manner as to afford no assurance of its verity, and merits no consideration. *S. v. Anderson,* 208 N.C. 771, 182 S.E. 643; *S. v. Patrick,* 48 N.C. 443. A confession is

voluntary in law when—and only when—it was in fact voluntarily made. *S. v. Jones*, 203 N.C. 374, 166 S.E. 163; *Ziang Sung Wan v. United States*, 266 U.S. 1, 69 L. Ed. 131.

The observations of *Henderson, J.*, in *S. v. Roberts*, 12 N.C. 259, are sound and presently pertinent: "Confessions are either voluntary or involuntary. They are called voluntary when made neither under the influence of hope or fear, but are attributable to that love of truth which predominates in the breast of every man, not operated upon by other motives more powerful with him, and which, it is said, in the perfectly good man cannot be countervailed. These confessions are the highest evidences of truth, even in cases affecting life. But it is said, and said with truth, that confessions induced by hope or extorted by fear are, of all kinds of evidence, the least to be relied on, and are therefore entirely to be rejected."

The court's ruling on the voluntariness of the confession is supported by the defendant's own testimony given on the preliminary inquiry. The contentions of error in its admission are without force or substance.

The remaining exceptions, noted by the defendant on the trial, have been abandoned by him as they are not brought forward in his brief and no argument has been advanced, or authority cited, in support thereof. Hence, under the rule, they are deemed feckless or without merit and are treated as abandoned. Rule 28 of the Rules of Practice in the Supreme Court, 221 N.C. 562.

On the record as presented, the verdict and judgment will be upheld.

No error.