**DANIELS et al. v. CRAWFORD.**

No. 449–B.

United States District Court,
E. D. North Carolina, Raleigh Division.
July 12, 1951.

Herman L. Taylor, Raleigh, N. C., O. John Rogge and Murray Gordon (of Rogge, Fabrican, Gordon & Goldman), New York City, for petitioners.

Ralph Moody, Asst. Atty. Gen., R. Brookes Peters, Jr., Gen. Counsel State Highway & Public Works Commission, Raleigh, N. C., for respondent.

GILLIAM, District Judge.

The petitioners are Negro boys who were 17 and 18 years of age, respectively, at the date of their trial in the Superior Court of Pitt County, North Carolina, which began on the 30th day of May, 1949. They were charged with first degree murder, and, following a jury verdict of "guilty", were sentenced to die.

Lloyd Ray was arrested without a warrant a day or two following the murder, by the Sheriff of Pitt County and certain other enforcement officers upon information justifying arrest without warrant under North Carolina Statute G.S. § 15–41; he was taken to Williamston, the county seat of Martin County, which adjoins Pitt County, for safekeeping, and during the automobile trip to the Martin County jail, a distance of less than fifty miles, he stated that he had

participated in the murder, and related some of the details of how it was accomplished; Bennie was arrested without a warrant, also upon information justifying such action, by the Sheriff and other officers on the day following the arrest of Lloyd Ray, and he too was taken to Williamston for incarceration; on the way to Williamston Bennie admitted his participation in the murder, and later each petitioner signed a written confession which was introduced by the State at the trial.

The indictment was found by a Grand Jury sitting at the March Term, 1949, of Pitt County Superior Court, and upon its return, it having been made to appear that the petitioners were without counsel and that they were financially unable to obtain counsel, the Court appointed two members of the Pitt County Bar, of experience and in good standing, to represent them. Upon arraignment at that Term the petitioners entered pleas of "not guilty", and the cause was continued for the Term. Thereupon the presiding Judge committed the petitioners to the care and custody of the North Carolina State Hospital for the Insane, at Goldsboro, and to Dr. I. C. Long, M. D., an expert psychiatrist, for the purpose of study of their mental condition. When at the next term, that is, April Term, 1949, it appeared that the examination at the State Hospital had not been completed, the cause was continued upon motion of petitioners' counsel until the May Term, 1949, at which term, as above indicated, it was tried. When it was made to appear to the presiding Judge at the April Term, 1949, that petitioners had obtained counsel of their own choice, that is, Mr. Herman L. Taylor and Mr. C. J. Gates, both now of counsel for them, the counsel earlier appointed by the Court were permitted to withdraw. Prior to the call of the case for trial, the petitioners had been found sane by the staff of the State Hospital at Goldsboro.

When the case was called for trial at the May Term, 1949, counsel for petitioners for the first time presented a motion to quash the indictment and a challenge to the array of the trial jury, alleging systematic and purposeful exclusion of Negroes from jury service solely on account of race. The Court ruled that, as the motion to quash was made after pleading to the indictment, it lay within the discretion of the Court whether it would allow or deny the motion and the challenge. The trial Judge then proceeded to hear evidence on this question from both the State and the petitioners, and upon such evidence overruled both the motion to quash and the challenge to the array.

During the progress of the trial the State offered the confessions of the petitioners. Upon objection made on the ground that the confessions were procured by coercion and were, therefore, not voluntary, the Judge, in accord with the practice and procedure in North Carolina in such situations, heard evidence from the State and the petitioners in the absence of the jury, and concluded that the confessions were made without offer of reward or hope of reward, freely and voluntarily, that they were not extorted by either coercion, intimidation, or exhibition of any force or threat. Having so found, the Court overruled the objections and the confessions were admitted as evidence for the jury's consideration. The jury returned a verdict of guilty of murder in the first degree as to each petitioner, and as such verdict was not accompanied by a recommendation of life imprisonment—which by North Carolina Statute is permitted—the presiding Judge sentenced both petitioners to death, such being the mandatory punishment for murder in the first degree in the absence of a recommendation by the jury.

The petitioners, with the permission of the Court, appealed in forma pauperis to the Supreme Court of North Carolina, and by order of the Court petitioners were allowed sixty days from the date of the judgment in which to make out and serve a case on appeal upon the Solicitor of the District, and the Solicitor was allowed thirty days after such service to serve his counter-case or exceptions; the judgment against the petitioners was entered on June 6, 1949, and the petitioners' case on appeal was served on the Solicitor on August 6, 1949, one day after the expiration of the sixty days allowed by the Court. Within the thirty days allowed, following service of

the petitioners' case on appeal, the Solicitor filed a number of exceptions and also a motion to strike out the petitioners' case on appeal, because not served within the sixty days allowed. When it became apparent that the case could not be docketed by September 27, 1949, which was the last day for docketing appeals from the Judicial District which embraces Pitt County, the petitioners, through their counsel, on September 27, 1949, filed a petition for writ of certiorari before the Supreme Court of North Carolina, praying that they be allowed to docket the appeal which they duly noted at the May 30, 1949 Term of the Superior Court of Pitt County, setting forth that as the case on appeal in their cause had not been settled they could not docket said case within the time required by the rules of the Court. Two days after the filing of this petition for writ of certiorari a hearing was held before the Superior Court Judge who tried the case and ultimately on the 30th day of October, 1949, the Trial Judge entered an order allowing the motion of the Solicitor to strike defendants' statement of case on appeal. The petition for writ of certiorari was heard by the Supreme Court of North Carolina at the Fall Term, 1949, and denied, and in the Court's opinion, State v. Daniels, 231 N.C. 17, at page 25, 56 S.E.2d 2 at page 7, it is written: "The gravamen of the present challenge to the validity of the trial is found in the two objections referred to in the petition: The alleged systematic exclusion of members of the Negro race from the jury lists of Pitt County and the consequent absence of Negroes from the panel which tried them; the admission in evidence of confessions of guilt by the accused which confessions they contend were not voluntary but were procured by illegal means.

"Both these objections involve questions of invasion of constitutional rights which, in the instant case, can be presented only through matter extraneous to the record. Ordinarily in this situation resort may be had to writs of error coram nobis. * * *

"The writ of [error] coram nobis can only be granted in the court where the judgment was rendered. * * *

"Since here the authority for the writ stems from the supervisory power given the Supreme Court in the section of the Constitution cited, it is necessary that an application be made to this Court for permission to apply for the writ to the Superior Court in which the case was tried. * * * It is granted here only upon a 'prima facie showing of substantiality,' and it is observed in the Taylor case last cited, 'The ultimate merits of the petitioner's claim are not for us, but for the trial court.'

"On consideration in the trial court, if the decision is adverse to the petitioners, the Court will find the facts, and an appeal to this Court will lie as in other cases."

Following the denial of the petition for writ of certiorari, and following, no doubt, the suggestion contained in the opinion of the Court, the petitioners filed a petition with the Supreme Court of North Carolina for permission to apply to the Superior Court of Pitt County for a writ of error coram nobis; this petition was denied, the Supreme Court stating: "Their petition does not make a prima facie showing of substance which is necessary to bring themselves within the purview of the writ. * *

"The petition is insufficient to justify the Court in issuing the writ and instigating the incident procedure in the court below." State v. Daniels, 231 N.C. 341, 56 S.E.2d 646, 647.

On March 1, 1950, the State of North Carolina, acting through its Attorney General, moved to docket and dismiss, under Rule 17 of the Rules of the Supreme Court of North Carolina, the appeal of petitioners from the death sentence, and this motion was allowed and the appeal dismissed. State v. Daniels, 231 N.C. 509, 57 S.E.2d 653. In the opinion in this case the Supreme Court of North Carolina said: "The defendants were tried and convicted at the May Term, 1949, of Pitt County Superior Court, on an indictment charging murder in the first degree, and were sentenced to death, from which judgment they gave notice of appeal. Not having served Case on Appeal in apt time they applied to this Court for a writ of certiorari for bringing up the Case on Appeal, which was denied for want of merit. * * * Subsequently

they petitioned the Court for leave to file a writ of error coram nobis; and not having brought themselves within the purview of such a writ, petition was denied. * * *

"No case on appeal having been filed in the office of the Clerk, the Attorney General has caused the record proper to be filed in this Court and moves that the case and record be docketed and the appeal dismissed under Rule 17 of the Rules of Practice of the Court.

"We have carefully examined the record filed in this case and find no error therein. For the causes stated the motion of the Attorney General is allowed; the judgment of the lower court is affirmed and the appeal is dismissed".

Thereupon, on the second day of March, 1950, execution of judgment was stayed by the Chief Justice of the Supreme Court of North Carolina, and the petitioners filed an application in the Supreme Court of the United States for a petition for writ of certiorari; a petition, brief, and other formal parts of a petition for writ of certiorari were filed in the Supreme Court of the United States, and on May 8, 1950, the petition for writ of certiorari was denied. Daniels v. State, 339 U.S. 954, 70 S.Ct. 837, 94 L.Ed. 1366.

The petitioners then petitioned the Supreme Court of North Carolina again for leave to file a petition in the Superior Court of Pitt County for a writ of error coram nobis, and incorporated in that petition matters that were presented to the Supreme Court of the United States in their petition to that Court for certiorari. This petition was denied on May 24, 1950. 232 N.C. 196, 59 S.E.2d 430, 431. The North Carolina Supreme Court stated: "On the face of the petition it appears that these are matters fully presented to the Court upon their trial and there passed upon".

Upon the denial of this petition and on the — day of —————, 1950, the petitioners filed a petition for writ of habeas corpus in this Court, and the Court issued the writ and stayed the execution of the judgments of the State Court pending a hearing.

At the outset of the hearing upon the return to the writ, the respondent filed a motion to discharge the writ without the taking of evidence. The motion is filed with the court papers. The Court reserved its decision upon the motion and proceeded to the taking of evidence from both the petitioners and the respondent. The respondent entered a general objection to every question propounded by petitioners to their witnesses, and upon the overruling of each objection the respondent moved to strike out the answer to the question, and in each instance the motion was denied. In each instance where the respondent examined a witness in his behalf, the questions were propounded after the respondent had reiterated his objection to all the evidence and reserved his exceptions.

Upon the evidence introduced, the Court has found certain facts separately and these findings are filed simultaneously herewith.

At the conclusion of all the evidence, the respondent renewed his motion to dismiss and the motion was denied and overruled.

Further study following the presentation of briefs and oral argument has convinced me that the decision overruling the respondent's motion to dismiss the writ as a matter of law upon the procedural history was erroneous, and that the motion should have been granted. It would be a stupendous undertaking to review the numerous decisions on this question and I do not feel called upon to do so. These decisions are reviewed in a number of cases, among them Smith v. United States, decided by the U. S. Court of Appeals of the District of Columbia on December 7, 1950, and reported in 187 F.2d at page 192.

The general principles involved in cases of this nature where habeas corpus is resorted to by one under judgment of a State Court are discussed by Chief Judge Parker in Sanderlin v. Smyth, 138 F.2d 729, at page 730, where these general observations are set out: "The writ of habeas corpus may not be used in such cases as an appeal or writ of error to review proceedings in the state court"; (138 F.2d at page 731) "The judgment of the state court is ordinarily res adjudicata, not only of those issues which were raised and determined, but also of those which might have

been raised"; (138 F.2d at page 731) "Ordinarily, adjudications made by the state courts in connection with applications made to them will be binding on the federal courts"; (138 F.2d at page 732) "The only question which we can consider with respect to these matters is, not whether error was committed under state practice, but whether there was a denial of due process as guaranteed by the federal constitution"; (138 F.2d at page 732) "As said in the case last cited [Buchalter v. New York, 319 U.S. at page 427, 63 S.Ct. 1129, 87 L.Ed. 1492]: 'The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are designated as the "law of the land." Where this requirement has been disregarded in a criminal trial in a state court this court has not hesitated to exercise its jurisdiction to enforce the constitutional guarantee. But the Amendment does not draw to itself the provisions of state constitutions or state laws. It leaves the states free to enforce their criminal laws under such statutory provisions and common law doctrines as they deem appropriate; and does not permit a party to bring to the test of a decision in this court every ruling made in the course of a trial in a state court. * * * As already stated, the due process clause of the Fourteenth Amendment does not enable us to review errors of state law however material under [State] law'."

Other cases which seem to uphold the view that the decision of the State Court is binding on this Court are: Andrews v. Swartz, 156 U.S. 272, 15 S.Ct. 389, 39 L. Ed. 422; Morton v. Henderson, 5 Cir., 123 F.2d 48; Hawk v. Olsen, 8 Cir., 130 F.2d 910. There are others.

Maybe, in spite of the decisions, it is true, as petitioners contend, that where it appears clearly that there has been such a gross violation of a defendant's constitutional rights as amounts to a denial of even the substance of a fair trial, the United States Court will strike down the trial and judgment in the State Court. But

such a case is not presented. The petitioners, though young and illiterate as their counsel point out, were ably and adequately represented, first by experienced counsel named by the Court, and later by counsel of their own selection; before their trial the State Court took the precaution of having them examined by competent psychiatrists who found them sane; the identical questions which petitioners wish passed upon now were passed upon in the State Court, not in a mere pro forma manner but painstakingly and carefully by the Trial Judge who heard practically the same witnesses and the same evidence presented to this Court, and upon such evidence concluded the questions against the petitioners; an appeal was taken to the Supreme Court of the State; though the petitioners failed to comply with the law in serving the case on appeal and for this reason the case on appeal was stricken, the Supreme Court of North Carolina, as it always does in a death case, examined the record and found no error. The Court so stated in the opinion dismissing the appeal. The record which was before that Court contained all the evidence and all the rulings pertinent to the two questions raised in the State Court and raised again here. The record also contained the instructions of the Trial Judge with respect to the confessions, about which petitioners now complain. Petitioners applied for writ of certiorari to the United States Supreme Court, and this was denied; other procedural steps were taken in the State Court, all of which are detailed in the findings of fact. It is difficult to believe that any impartial person would conclude in the light of the procedural history of this case that it clearly appears that petitioners were denied the substance of a fair trial.

Judge Williams, upon the evidence before him, found that petitioners had not been discriminated against in the composition of the jury, and the Supreme Court of North Carolina found no error in this ruling. This latter circumstance should have great weight in view of the consistent holding of that Court, beginning with the decision in State v. Peoples, 131 N.C. at page 784, 42 S.E. 814, decided more than forty

years ago, " * * * that the intentional, arbitrary and systematic exclusion of any portion of the population from jury service, grand or petit, on account of race, color, creed, or national origin, is a variance with the fundamental law and cannot stand". State v. Brown, 233 N.C. 202, 205, 63 S.E.2d 99, 101. And that Court has stood ready to reverse a contrary ruling of the trial Court when the evidence produced clearly showed that the trial Court's conclusion was not supported by the evidence. The petitioners say, though, that their appeal was not considered by the Supreme Court, but was dismissed because their counsel were one day late in serving their case on appeal. True, the appeal was dismissed, but we may believe the Court was speaking the truth in saying in the per curiam opinion: "We have carefully examined the record filed in this case and find no error therein. * * * the judgment of the lower court is affirmed and the appeal is dismissed". [231 N.C. 509, 57 S.E.2d 654.]

 It is true that there was evidence presented which permitted an inference that the jury box contained a smaller percentage of educationally qualified Negroes than that of the whites, but there was no basis for a comparison of the two races from the standpoint of moral character, which under North Carolina law is also an essential requirement for those deemed qualified to serve as jurors. While under the evidence an inference of discrimination might be drawn, such showing is not sufficient to justify declaring the trial in the State Court void. As stated by the North Carolina Supreme Court in State v. Brown, 233 N.C. at page 202, 63 S.E.2d 99, 100, "It rests only in imagination or conjecture. The defendant must show prejudice, other than guess or surmise, before any relief could be granted on any such gossamer or attenuate ground". Charging exclusion of negroes on account of race does not make it so. The burden rests upon the petitioners to prove it and in the absence of proof of corruption the law presumes that the officials to whom the responsibility is committed faithfully performed their duty. State v. Brown, supra. Every official who had a hand in composing the jury list stated under oath that no person's name was excluded because of race, and the other evidence does not show circumstantially that they testified falsely. But the petitioners complain because, as they assert, the evidence shows that the names were chosen solely from the voting lists rather than from tax lists and other sources. In absence of any clear proof that such was done as a part of a scheme to exclude Negroes on account of race, they are entitled to no relief on this account, even if the fact is as they claim. In the Brown case, cited above, the argument was advanced that the jury was illegally composed because the names were taken solely from the tax lists while the applicable statute provided for use of such lists and the inclusion of " 'names * * * who do not appear upon the tax lists, who are residents of the county and over twenty-one years of age' ". The Supreme Court of North Carolina rejected the contention with this comment: " * * * it is thoroughly settled by our decisions that the provisions of the statute now in focus are directory, and not mandatory, in the absence of proof of bad faith or corruption on the part of the officers charged with the duty of selecting the jury list". So it seems that even though the voting lists were exclusively used in obtaining the names for the jury box, this alone would not constitute failure to observe the statute and, therefore, discrimination in the selection of the names. Proof is required. Both the North Carolina trial Court and the North Carolina Supreme Court held that there was no proof of discrimination, and this conclusion is in accord with my own.

 There is even less basis for the petitioners' position with respect to the confessions. It seems rather clear that this position is not available to the petitioners in this proceeding. Numerous cases, in addition to those cited above, hold that a habeas corpus proceeding may not be used to correct errors committed in the trial Court which may be reviewed on appeal. The authorities cited by petitioners do not persuade me to a contrary view. But even if the position is available the petitioners failed to substantiate it. In their brief,

counsel state: " * * * petitioner contends and, of course, the police officer's denied, that he was put in extreme fear of bodily harm". The matter might as well be phrased: The State contended and, of course, the defendants denied, that the confessions were freely and voluntarily made to the officers. Each of the participating officers stated that there was no force or coercion used, no threat made, no hope of reward suggested, and that each of the petitioners made his confession voluntarily. It may be that on occasion an officer will extort a confession and then color his testimony to make the contrary appear; no doubt such thing has happened; on the other hand, it is well known that many a defendant has voluntarily confessed and later, when face to face with the consequences, has claimed that the confession was unlawfully obtained. Besides, the testimony of the officers is borne out by the other evidence, notably the testimony of the witness who talked with the petitioners while they were under observation at the State Hospital for the Insane, where they obviously were removed from any possible fear of the officers and were in a friendly and reassuring atmosphere. In addition, the confessions were made on several other occasions and never denied until petitioners were called at the trial in an effort to prove their point and escape punishment. Other evidence in the case very strongly corroborated the State's charges and the integrity of the confessions.

The position is taken that the confessions were involuntary because the petitioners were taken and held a few days without warrant. Under North Carolina law the officers had a legal right to arrest without warrant. As pointed out by petitioners' counsel, the crime was "a particularly atrocious one and aroused much feeling in the community". The officers knew that a felony had been committed, and their information was sufficient to afford reasonable ground for the belief that the petitioners committed it. It was natural for them to believe that the suspects might escape unless immediately arrested. Under North Carolina General Statutes, § 15–41, the officers were not required to obtain warrants, as this formality in such situations is dispensed with in the interest of the effective enforcement of the law. It does not appear that the petitioners were held an undue length of time before the issuance of warrants, but even so, each petitioner made a confession before he was even put in prison and within minutes after being arrested. Neither the length of time held without warrants, nor the treatment they received, brought about the confessions; they were immediately and voluntarily given, and reiterated several times thereafter. The trial Judge, and the Supreme Court of North Carolina had no doubt concerning the lawfulness and competency of the confessions, and neither have I.

■ Another contention of petitioners is that the trial Judge incorrectly charged the jury as to the consideration to be given the confessions which were admitted over petitioners' objections. The handling of the matter was in accord with North Carolina procedure, and the Supreme Court of North Carolina found no error. In addition, I am of the opinion that the correctness of the charge may not be reviewed in this proceeding.

■ Lastly, the petitioners lay considerable stress on the fact that, as they insist, the trial was not reviewed because the case on appeal was served one day late; and they take the position, in effect, that with two lives at stake this formality should have been overlooked. There is nothing to the position. In the first place, the Supreme Court reviewed the record and found no error. But even if this were not true, the petitioners cannot complain. In Andrews v. Swartz, 156 U.S. 272 at page 275, 15 S. Ct. 389, 391, 39 L.Ed. 422, the Supreme Court, quoting from McKane v. Durston, 153 U.S. 684 at page 687, 14 S.Ct. 913, 38 L.Ed. 867, said: " 'An appeal from a judgment of conviction is not a matter of * * * right, independently of constitutional or statutory provisions allowing such appeal. * * * It is wholly within the discretion of the state to allow or not to allow such a review.' * * * and 'whether an appeal should be allowed, and, if so, under what circumstances or on what

conditions, are matters for each state to determine for itself'."

My conclusion, therefore, is that the petitioners have had a perfectly fair and impartial trial, in accordance with law and constitutional provisions, that the writ should be vacated because not available to petitioners on the procedural history, and if so, the petitioners are not entitled to discharge because they have failed to substantiate the charges made.

An order vacating the writ and dismissing the petitioners has been entered.

*Addenda*: Two other cases which seem to support the conclusion reached are: Stonebreaker v. Smyth, 4 Cir., 163 F.2d page 498, and Jerry Adkins v. W. Frank Smith, 4 Cir., 188 F.2d 452.