[Crim. No. 8268. Fourth Dist., Div. One. May 19, 1976.]

In re JOHN WILLIAM SHUTE on Habeas Corpus.

COUNSEL

Appellate Defenders, Inc., and Paul Bell, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, Karl J. Phaler and Alan S. Meth, Deputy Attorneys General, for Respondent.

OPINION

**BROWN (Gerald), P. J.**—There are many facets to what starts out as a simple matter.

On July 18, 1975, John William Shute filed a petition for writ of habeas corpus in the Supreme Court of California, praying for a credit of 385 days presentence commitment time. The petition states Shute was an inmate of the California Medical Facility at Vacaville, California.

On October 30, 1975, the Supreme Court ordered the Director of the Department of Corrections to show cause before this court why the relief prayed for should not be granted, citing *In re Bentley,* 43 Cal.App.3d 988 [118 Cal.Rptr. 452]. The Supreme Court ordered the written return to be served and filed on or before November 10, 1975.

The Attorney General of California filed a return on November 10, 1975, stating Shute had been granted 22 days credit and was entitled to no more credit. On November 17, 1975, Shute filed a traverse to the return. We appointed Appellate Defenders, Inc. as Shute's attorney on December 11, 1975.

The hearing before this court on the order to show cause was originally scheduled for March 9, 1976, but was extended a month on Appellate Defenders' application, in order that it might file a supplemental argument in Shute's behalf, considering the possible effect of an opinion filed in the Court of Appeal, Third Appellate District relating to Shute. The application stated the delay would not prejudice Shute, because he is now released on parole.

The matter was again continued because of the filing of additional papers, Shute seeking to expand his prayer to dismissal of the superior court judgment underlying his petition, and the filing of a supplemental return of the Attorney General with the request we judicially notice the Third Appellate District's file, 3 Crim. No. 6796, with opinion (referred to in the paragraph above). We granted that request. The Attorney General claims that case is dispositive of the matter before us.

We shall present the background to the current situation.

On February 4, 1970, Shute was convicted on a guilty plea in the Orange County Superior Court, of selling marijuana (Health & Saf. Code, § 11531). Free on bail, he was ordered to return to court on March 12, 1970, for sentencing. He did not return, and was a fugitive from justice for almost a year. He was arrested on February 9, 1971, was indicted in federal court for possessing counterfeit money, pled guilty to the misdemeanor of removing property subject to seizure, was sentenced to one year in federal custody, the "sentence to run concurrent with any charge he will be serving during that period of time for the State of California."

Shute was released from federal custody on January 5, 1972, was taken to San Francisco County Superior Court where he was convicted on a plea of guilty for possessing marijuana; was taken to Orange County in February, where on February 24, 1972, he was sentenced for the crime on which he had failed to appear almost two years before, the sentence being for the term prescribed by law, five years to life. The Adult Authority fixed the time at 11 years total, which included 9 years basic

for selling marijuana, listed as being an aggravated case, and 2 years for the federal misdemeanor of removing property subject to seizure. Mention was made of a manslaughter conviction in 1953, for which the Adult Authority added no time. The Third District's file, 3 Crim. No. 6796, contains authoritative information Shute's 1953 conviction was in the federal court in the District of Columbia, for murder in the first degree.

In his original petition for writ of habeas corpus, filed in the Supreme Court July 18, 1975, Shute states no appeal was taken from the judgment pronounced February 24, 1972. He lists four other petitions for writs of habeas corpus, and identifies them. He does not list two additional petitions for writ of habeas corpus, one in the Third District, file 3 Crim. No. 6796, which we have mentioned, and the other in the federal district court, central district, both of which his counsel has brought to our attention. We shall treat these two other petitions later.

The original petition bases its claim for presentence commitment time credit on Penal Code section 2900.5, which provides:

"(a) In all felony convictions, either by plea or by verdict, when the defendant has been in custody in any city, county, or city and county jail, all days of custody of the defendant from the date of arrest to the date on which the serving of the sentence imposed commences, including days served as a condition of probation in compliance with a court order, shall be credited upon his sentence, or credited to any fine which may be imposed, at the rate of not less than twenty dollars ($20) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the sentence to be imposed, the entire sentence shall be deemed to have been served. In any case where the court has imposed both a prison sentence and a fine, any days to be credited to the defendant shall first be applied to the sentence imposed, and thereafter such remaining days, if any, shall be applied to the fine.

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.

"(c) This section shall be applicable only to those persons who are delivered into the custody of the Director of Corrections on or after the effective date of this section."

The statute says nothing about credit for time while in federal custody.

Shute also bases his request for time credit on *In re Miller,* (Cal.App.) which allowed state credit for time spent in federal custody where the California sentence had been ordered to run concurrently with the federal sentence. The Court of Appeal, however, granted a rehearing in that case, making the opinion nonexistent, and reached a different result in the final opinion, *In re Miller,* 41 Cal.App.3d 1046 [116 Cal.Rptr. 624]. Miller was not entitled to credit for presentence time in federal custody on federal charges not reasonably attributable to the state charge.

■ Shute's time in federal custody, regarding counterfeit money, had nothing to do with his marijuana conviction in Orange County. The federal proceeding was wholly unrelated to the state matter and custody under it was not attributable to the state case (*In re Miller, supra,* 41 Cal.App.3d 1046). Credit in the state proceeding for the federal time is not allowed under Penal Code section 2900.5. *In re Bentley, supra,* 43 Cal.App.3d 988, is not helpful to Shute's position. Bentley does state any credits for time are not applicable to a parole term (p. 995). Shute is now on parole.

In an addendum (A) to his original petition, Shute states while he was in federal custody he sought, through Attorney David I. Berman, removal to Orange County for sentencing, but the Orange County District Attorney refused to heed his request; the request occurred October 1, 1971; on November 4, 1971, Attorney Berman requested a withdrawal of the guilty plea and a speedy rearraignment; the district attorney declined to act. One may be forgiven for wondering about the incongruity of Shute's suddenly becoming anxious to be sentenced, when his own conduct of disappearing for a year had prevented it.

Penal Code section 1381.5 provides:

"Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution, and at the time of entry upon such term of imprisonment or at any time during such term of imprisonment there is pending in any court of this state any criminal indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced the district attorney of the county in which such matters are pending, upon receiving from such defendant a request that he be brought to trial or for sentencing, shall promptly inquire of the warden or other head of the

federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial or for sentencing. If an assent from authorized federal authorities for release of the defendant for trial or sentencing is received by the district attorney he shall bring him to trial or sentencing within 90 days after receipt of such assent, unless the federal authorities specify a date of release after 90 days, in which event the district attorney shall bring the prisoner to trial or sentencing at such specified time, or unless the defendant requests, in open court, and receives, or, in open court, consents to, a continuance, in which event he may be brought to trial or sentencing within 90 days from such request or consent.

"If a defendant is not brought to trial or for sentencing as provided by this section, the court in which the action is pending shall, on motion or suggestion of the district attorney, or representative of the United States, or the defendant or his counsel, dismiss the action."

The features in section 1381.5 relating to sentencing were added in 1971, and, as Shute points out, were not in effect when Shute made his requests. But even without the words, sentencing is covered in the statute in its pre-1971 language. Sentencing is a part of a speedy trial (*People* v. *Brown,* 260 Cal.App.2d 745, 750-751 [67 Cal.Rptr. 288]).

In his supplemental document filed by his attorney February 24, 1976, Shute seeks to expand his relief to mandatory dismissal under the second paragraph of section 1381.5. He points out his requests for action occurred October 1 and November 4, 1971; he was not sentenced until February 24, 1972, which, he says, is after the 90 days allowed under section 1381.5.

Shute's rights under section 1381.5 were considered by the Court of Appeal, Third Appellate District, in its unpublished opinion filed April 11, 1973 (see rule 977, Cal. Rules of Court). There the court pointed out "The mandate of § 1381.5 requiring district attorneys to bring to trial within 90 days those defendants previously convicted and confined in federal correctional institutions, is dependent 'upon receiving from such defendant a request that he be brought to trial' on such charge." No request was made. The court said:

"There was conflicting evidence bearing on the issue of the presence or absence of a 'request.'

"Petitioner insists that through his then attorney, David Berman, he had attempted for a period of five months prior to date of his sentence in the United States District Court to 'enter into a plea bargain which would include dismissal of charges in Orange County.' Petitioner insists that Berman informed the district attorney 'of petitioner's desire to obtain a speedy conclusion to his pending actions in Orange County.' When petitioner arrived at the federal institution on July 16, 1971, he stated that he fully expected to be picked up for the trial or determination of the Orange County proceedings, but this was not done. He remained in federal custody until January 5, 1972. He was then removed to San Francisco on another charge, and on February 13, 1972, was taken into the custody of the Orange County authorities.

"The declaration filed by Attorney Berman recites that he conferred with the Deputy District Attorney of Orange County on October 1, 1971, but since he was not then attorney of record for petitioner, he was precluded from seeing certain discoverable items in possession of the district attorney. Berman, apparently at this time, was seeking both withdrawal of the prior guilty plea entered in the Orange County proceeding and a plea bargain with the Orange County District Attorney and the United States Attorney whereby in exchange for petitioner's plea of guilty to the federal charge, the Orange County proceeding would be dismissed. Such a proposal was not accepted by the prosecuting officers of either jurisdiction.

"On the specific and critical issue of whether the Orange County District Attorney received from the defendant a request that he be brought to trial, Berman's affidavit in pertinent part reads as follows: 'John William Shute mentioned to me on several occasions prior to July 12, 1971, and also between July 12, 1971 and August 1, 1971, that he believed that he was entitled to speedy trial and speedy sentencing in his respective pending cases in the Superior Courts in San Francisco and Orange County. I never advised him concerning the correctness of his beliefs, but at least by September 28, 1971 I intended to look into the matter.

" '. . . On October 1, 1971, I conferred with Orange County Deputy District Attorney Al Wells concerning Mr. Shute's case there at Mr. Well's office. I have no specific recollection that I discussed speedy proceeding with either Deputy District Attorneys, but from reviewing my Affidavit Supporting Motion to Modify Sentence . . . in the United States District for the Southern District of California, I probably had such

conversations, as I implied as much in that affidavit. I do not have a specific recollection of discussing this question with either of the Deputy District Attorneys, nor do I specifically recall that I did not discuss this question with them.' We regard such averments as equivocal and uncertain.

"Alfred Wells, deputy in the Orange County District Attorney's office, with whom Mr. Berman had contact on behalf of petitioner swears 'That to the best of your affiant's knowledge, no demand for speedy sentence was ever served upon this office in writing or verbally by the attorney or the defendant.'

## Applicable Law

"Both the Sixth Amendment to the United States Constitution, and Article I, section 13, of the California Constitution provide that an accused is entitled to a speedy and public trial. (See *Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 810.) The right to a speedy trial is a fundamental right, designed to protect the defendant against delay caused by wilful oppression or neglect of the state or its officers. (*Barker* v. *Municipal Court, supra,* p. 811.) The constitutional provision, of course, is self-executing and requires no specific legislation to effectuate it. Certain legislation has been enacted, however, more specifically defining the constitutional right. (See Pen. Code, §§ 1381-1389.7.) Furthermore, it has been held that imposition of sentence is a critical portion of the criminal proceedings invoking the application of Penal Code section 1381.5. (*People* v. *Brown* (1968) 260 Cal.App.2d 745, 751.)

"In the matter before us, as indicated, the District Attorney of Orange County has filed an affidavit with this court denying that any such request contemplated by section 1381.5 of the Penal Code was ever made upon him. The affidavit of petitioner's attorney, Berman, is equivocal. On the critical issue his language is 'I have no specific recollection . . . I probably had such conversations . . . . I do not have a specific recollection of discussing this question . . . nor do I specifically recall that I did not . . . .' On balance the record indicates that neither petitioner, personally, nor his former attorney made any such request.

"We conclude accordingly that petitioner's rights under Penal Code section 1381.5 were not violated.

"The petition is denied and the order to show cause is discharged."

The opinion is authored by Presiding Justice Richardson and concurred in by Justice Regan and Assigned Justice Goldstein.

The Third District's file, 3 Crim. No. 6796, shows Berman became Shute's attorney of record as to the Orange County matter on November 8, 1971, which was the filing date of the substitution of attorney. Berman's letter to the Orange County Superior Court, dated November 4, 1971 moving to withdraw the guilty plea, and requesting rearraignment, was filed November 28, 1971. ■ Sentencing occurred February 24, 1972, which is 88 days after the filing of Berman's letter, and is, therefore, within the 90-day time requirement of section 1381.5.

Moreover, as the Attorney General pointed out in oral argument, the People may avoid dismissal under Penal Code section 1381.5 by a showing of good cause (*People* v. *Manina,* 45 Cal.App.3d 896, 899 [120 Cal.Rptr. 51], citing *Barker* v. *Municipal Court,* 64 Cal.2d 806, 811-812 [51 Cal.Rptr. 921, 415 P.2d 809], and other cases). If we assume Berman made a request, for trial or sentencing, the earliest it could have been made is November 8, 1971, the day he became attorney of record. Excusing for good cause the 32 days from January 5, 1972, to February 13, 1972, when Shute was in San Francisco for the handling of his criminal charge there, the sentencing on February 24, 1972, was 76 days after any possible request. Thus, there is no impropriety or mishandling by the People or the court of Shute's case under Penal Code section 1381.5. Nor, as claimed by Shute in his supplemental arguments and request filed February 24, 1976, and March 29, 1976, was his counsel Berman ineffective in not pursuing a dismissal of the Orange County conviction or in obtaining a speedy trial. Shute was not entitled to the dismissal; his sentencing cannot be said to have lacked speed.

Shute brings to our attention in the additional argument and authorities filed March 29, 1976, a copy of a judgment filed September 30, 1974, in the United States District Court, Central District of California, Civil No. 73-2010-LTL(K), dismissing Shute's petition for writ of habeas corpus, after adopting the findings and conclusions of the magistrate. The petition relates to the same facts now fully presented in this court. The court found Shute had exhausted his state remedies. Evidently to have standing in federal court, Shute had to claim his state remedies were exhausted. That being found true, as undoubtedly alleged by him, why does he come back to the state court? Did he take the position his state remedies were exhausted only until his petition in the federal court was dismissed?

The findings and conclusions in the federal case included:

"Petitioner is serving a term of five years to life, imposed by the Superior Court of the State of California for the County of Orange, after a plea of guilty to a violation of § 11531 California Health and Safety Code [Sale of Marijuana].

"Petitioner has exhausted his state remedies.

"Petitioner alleges a violation of his federally protected rights to due process of law in that he was deprived of his right to a speedy trial. He seeks immediate release.

"Petitioner plead guilty to the charge in the present action on February 4, 1970 (No. C-21925) in the Superior Court of the State of California for the County of Orange, and the matter was continued to March 12, 1970 for probation and sentence. Petitioner, who was on bail, did not appear on the latter date and a bench warrant issued for his arrest.

"In 1971, petitioner was arrested for a violation of federal law. On July 12 of that year, after a plea of guilty to a violation of 18 U.S.C. § 2232, he was sentenced to one (1) year to the custody of the Attorney General, time to be served concurrently with pending state charges.

"On October 1, 1971, petitioner's new attorney conferred with the District Attorney in Orange County about having petitioner brought out for sentencing. Petitioner was then confined at Terminal Island, California. Orange County refused to incur the necessary expense but stated that they would order him out if petitioner would pay it. Petitioner was indigent at the time.

"On November 4, 1971, petitioner's attorney wrote a letter to the Superior Court of Orange County asking to be substituted as attorney of record and moving to withdraw the previously entered plea of guilty. A request for a speedy rearraignment was made and it was noted that petitioner was then serving a one-year federal sentence at Terminal Island. No response was received to this letter.

"On January 5, 1972, petitioner was released from federal custody at the expiration of his term. He was taken into state custody to face pending charges in San Francisco, and on February 13, 1972 he was finally turned over to Orange County authorities.

"On February 24, 1972, petitioner was sentenced to the term he is now serving.

"Petitioner asserts that sentencing is a part of the trial procedure and that he complied with the requirements of California Penal Code §1381.5 which mandates a dismissal if the People do not promptly act to request the release of a federal prisoner for trial and to bring him to trial within 90 days after receipt of an agreement to release him for same by the federal authorities. He also alleges an attempt to frustrate the order of the sentencing judge in his federal case that the term be served concurrent with his state sentence.

"In his Response, the Attorney General mistakes the factual situation and argues that a plea of guilty waives all non-jurisdictional defects which occurred prior to its entry.

"A sentence to run concurrently with time to be imposed by a state court in the future is ineffective as such an order is in effect a designation of the place of confinement, and the federal court has no power to so designate. This power is reserved to the discretion of the Attorney General of the United States. 18 U.S.C. §4082. *Myers* v. *United States,* 319 F. Supp. 326 (C.D. Cal. 1970), aff'd, 451 F. 2d 402 (9th Cir. 1972); *United States* v. *McIntyre,* 271 F. Supp. 991 (S.D. N.Y. 1967), *aff'd,* 396 F.2d 859 (2d Cir. 1968), *Cert. denied,* 393 U.S. 1054 (1969).

"The question remains, assuming a violation of the mandate of § 1381.5 California Penal Code, does this amount to a violation of rights guaranteed to the petitioner by the Constitution of the United States?

"In a habeas corpus proceeding in federal court, the question to be considered with respect to the proceedings in the state court is, not whether error was committed under state practice, but whether there was denial of due process as guaranteed by the federal constitution. *Daniels* v. *Crawford,* 99 F. Supp. 208 (E.D. N.C. 1951), *aff'd, Daniels* v. *Allen,* 192 F. 2d 763 (4th Cir. 1951), *aff'd, Brown* v. *Walker,* 344 U.S. 443 (1953). Thus, the violation of the state statute does not, of itself, present a federal question.

"The federal right to a speedy trial, found in the Sixth Amendment, is applicable to and enforceable against the states by virtue of the due process requirements of the Fourteenth Amendment. *Klopfer* v. *North Carolina,* 386 U.S. 213 (1967). There is no constitutional basis for holding

that the speedy trial right can be quantified into a specific number of days or months. It is difficult to determine with exactness when the right has been denied. It is dependent upon the particular facts and circumstances of each case. *Barker* v. *Wingo,* 407 U.S. 514 (1972).

"In the instant case, the petitioner failed to appear for sentence for reasons which he does not put before us. Some 18 months later, petitioner, then serving a sentence in federal custody notified the state authorities that he wished to be sentenced. This was actually accomplished within 120 days of this notice and within 50 days of his release from federal custody. State law mandates that he be given credit for the portion of this time he was in custody for the offense for which he was subsequently sentenced. (California Penal Code §2900.5). There is no evidence that had he been sentenced while still doing federal time, the state sentence would have been concurrent. The Magistrate finds no deprivation of due process. It cannot be said, as a matter of law, that petitioner has been deprived of any federally guaranteed right.

"The Magistrate finds that it appears ·from the application that the *petition is frivolous within the meaning of 28 U.S.C. §1915(d) and that* the petitioner is not entitled to a writ of habeas corpus from this court at the present time. The petition should be dismissed pursuant to 28 U.S.C. §2243."

Shute has brought many petitions for writ of habeas corpus, in both state and federal courts. He asks for fairness. He is now on parole, which admittedly is a restraint. That the restraint through parole may last a little longer seems like a small burden for Shute to bear, when it appears he has received his day in court, in fact his many days in many courts, causing one to ask, is there ever a finality to litigation?

The petition for writ of habeas corpus is denied.

Ault, J., and Cologne, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied July 21, 1976. ,