STATE v. WILLIAM (PETE) BELL AND SAM RODMAN, JR.

(Filed 22 September, 1937.)

1. **Homicide § 25—Evidence of premeditation and deliberation held sufficient to be submitted to jury on charge of first degree murder.**

Evidence that on the evening of the homicide one of defendants had an altercation with deceased about some furniture which deceased had taken from the defendant's home, that the defendant left and returned two hours later with the other defendant, that in the affray shortly thereafter both defendants were holding deceased in a corner of the room trying to make him pay some money, and that one of defendants stabbed deceased with a knife, inflicting the wound resulting in death a few hours later, that after stabbing deceased, defendants dragged him outside the house, kicked and beat him with an iron pipe, and were heard to say after leaving deceased, "Let's go back and finish killing him," *is held* sufficient evidence of premeditation and predeliberation to be submitted to the jury on the question of defendants' guilt of murder in the first degree, although defendants introduce evidence tending to establish a less degree of the crime.

2. **Homicide § 18—**

Declarant's statement, "I am bleeding inside and I am going to die," made a few hours before death ensued, *is held* a sufficient predicate for the admission of testimony of his dying declarations.

**3. Same: Criminal Law §§ 41e, 81c—Testimony of subsequent declarations may be competent as corroborative of dying declaration.**

Where testimony of dying declarations of deceased are properly admitted, testimony of other witnesses of subsequent declarations by deceased are competent for the purpose of corroborating the dying declaration, and defendants have no cause for complaint on the ground that part of the subsequent testimony amplified the dying declaration when the amplification is favorable to their contentions rather than to those of the State.

**4. Criminal Law § 56: Constitutional Law § 33—Findings held to support refusal of motion in arrest for that only white men sat on jury.**

Defendants' motion in arrest of judgment on the ground that only persons of the white race sat in the trial jury, *is held* properly denied upon the trial court's findings that names of those qualified of the white and Negro races were in the jury box, that there was no racial discrimination, and that the trial jurors were all accepted by defendants and the jury duly sworn and impaneled without objection or challenge by defendants.

**5. Criminal Law § 81a: Constitutional Law § 33—**

The trial court's findings on the question of racial discrimination in selecting the trial jury are conclusive upon defendants' motions in arrest of judgment, made after verdict, when the findings are supported by evidence.

APPEAL by defendants from *Williams, J.,* at June Term, 1937, of BEAUFORT. No error.

The defendants were charged in the bills of indictment with the murder of one Heber Roberson. The jury returned verdict of guilty of murder in the first degree as to both defendants, and from judgment pronouncing sentence of death the defendants appealed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*
*S. M. Blount for defendant Bell.*
*LeRoy Scott for defendant Rodman.*

DEVIN, J. I. The appellants assign as error the refusal of the trial judge to charge the jury that the defendants were not guilty of murder in the first degree, on the ground that there was no evidence of deliberation and premeditation. This requires an examination of the testimony adduced at the trial to determine whether there was evidence sufficient to be submitted to the jury upon the question of first degree murder.

That the deceased came to his death by reason of a stab wound inflicted by one of the defendants was admitted on all sides, and there was ample evidence that both defendants were present at the time and acting in concert. Deceased died a few hours after having been stabbed.

The State's evidence tended to show that the homicide occurred at the home of the deceased, and that the fatal wound was given following an altercation and difficulty between the deceased and the defendants. There was some evidence that the quarrel arose in consequence of a dispute over a gambling game, or from a difficulty about the possession of a coin.

There was also evidence for the State that on the evening of the homicide defendant Bell came to the home of the deceased and after an altercation about the return of some furniture which deceased had taken from the home of defendant Bell, Bell left and came back two hours later with defendant Rodman, and that the difficulty shortly ensued; that the two defendants had deceased hemmed in a corner of the room, and both had hold of him at the time the fatal cutting was done. "They were holding him and trying to make him pay them some money;" that three other occupants of the room ran out, and a witness in the alley heard deceased "hollering and saying, 'Don't cut me no more.'" The State also offered evidence tending to show that shortly after the cutting defendants pulled deceased out on the porch and on the ground, and dragged and kicked and beat him with a piece of iron in spite of his cries and groans, and that after the defendants had gone out under the street light defendant Rodman was heard to say to defendant Bell, "Let's go back and finish killing him."

While there was evidence on behalf of the defendants, and permissible inferences from the testimony of other witnesses, that the homicide occurred under such circumstances as to constitute murder in the second degree, or manslaughter, or excusable homicide (all of which phases of the case were submitted to the jury in a charge free from error), we conclude there was evidence sufficient to be submitted to the jury that the killing was willful, deliberate, and premeditated, under the rule laid down in many authoritative decisions of this Court. *S. v. McCormac,* 116 N. C., 1033; *S. v. Lipscomb,* 134 N. C., 689; *S. v. Roberson,* 150 N. C., 837; *S. v. Daniels,* 164 N. C., 464; *S. v. Walker,* 173 N. C., 780; *S. v. Benson,* 183 N. C., 795; *S. v. Miller,* 197 N. C., 445; *S. v. Evans,* 198 N. C., 82; *S. v. Buffkin,* 209 N. C., 117.

It was said in *S. v. Johnson,* 199 N. C., 429: "The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." And in *S. v. Buffkin, supra,* it was said: "In determining the question of premeditation and deliberation, it is proper for the jury to take into consideration the conduct of the defendant, before and after, and all attendant circumstances, and it is immaterial how soon after resolving to kill the defendant carried his purpose into execution."

II. There was no error in admitting in evidence the dying declaration of the deceased as testified by the witness Alligood. This declaration was preceded by the specific statement by deceased, "I am bleeding inside and I am going to die," and was made a few hours before his death.

The testimony of the State's witness Singleton as to declarations of the deceased, made shortly after that related by witness Alligood, was only admitted for the purpose of corroborating the declaration to which Alligood testified in so far as it did so. While this somewhat amplified the former declaration, the additional circumstance related tended to strengthen the contentions of the defendants rather than those of the State, and in no event have the defendants ground of complaint. *S. v. Williams,* 168 N. C., 191; *S. v. Blackburn,* 80 N. C., 474; *S. v. Thomason,* 46 N. C., 274.

III. The defendants' motion in arrest of judgment on the ground that the defendants, as well as the deceased, being colored persons, their cause was prejudiced by reason of having been tried by a jury composed entirely of white men, cannot be sustained. The trial judge found the facts to be that the names of those qualified for jury service under the statute, which were in the jury box, embraced both white and colored jurors; that no discrimination was made between persons belonging to the white or Negro race, and that of the total number of jurors summoned in the case, the trial jurors were all accepted by the defendants and the jury duly sworn and impaneled without objection or challenge by the defendants. These findings of fact were supported by evidence and are conclusive upon defendants' motion, made for the first time after verdict. *S. v. Walls,* 211 N. C., 487; *S. v. Cooper,* 205 N. C., 657; *Thomas v. State of Texas,* 212 U. S., 278.

The other exceptions entered at the trial were not brought forward in appellants' briefs or debated on the oral argument. However, we have examined them and find that none of them can be sustained.

In the record, we find

No error.