STATE v. PHILIP MILTON KORITZ, CAL ROBERSON JONES AND MARGARET DeGRAFFENREID.

(Filed 5 June, 1947.)

**1. Jury §§ 2, 3—**

In respect of special veniremen summoned to serve as petit jurors, upon the overruling of defendants' challenge to the array on the ground of discrimination against members of the Negro race, defendants still have available challenges to the polls, and where they fail to exhaust their peremptory challenges they may not object to the composition of the jury, their right being not to select but to reject jurors, and it being necessary that the court's action in the matter be hurtful and its effect unavoidable before it will be held to vitiate the trial.

**2. Grand Jury § 1—**

Where on appeal to the Superior Court defendants are tried on warrants sworn out in a municipal court and not on bills of indictment, the composition of the grand jury could in no way affect them and their objection to the method of selecting grand jurors is irrelevant.

**3. Jury §§ 3, 8—**

Mere irregularity on the part of the jury commissioners in preparing the jury list, unless obviously, designedly, or intentionally discriminatory, does not vitiate the list or afford a challenge to the array.

**4. Jury § 8: Criminal Law § 67c—**

The finding of the trial court, when supported by evidence, that no discrimination was intended or resulted from the manner in which the jury list was prepared, is sufficient to support its action overruling a challenge to the array on the ground that the jury list contained a disproportionately small number of Negroes, and such ruling will not be disturbed on appeal in the absence of some pronounced ill consideration.

**5. Constitutional Law § 33—**

A member of the white race cannot object to the jury list on the ground that it contained a disproportionately small number of Negroes, since he could not be affected by any alleged discrimination against the Negro race.

**6. Same—**

In the composition of jury lists an absolute numerical ratio between the races is not required, the objective being to get a fair cross-section of community judgment and the action of the jury commissioners in applying

the standard of qualifications prescribed by law will be upheld unless there is evidence of fundamental unfairness which contravenes due process of law.

**7. Same—**

Our statutory requirements that the jury lists be taken from the names of the taxpayers of the county who are of good moral character and of sufficient intelligence are constitutional and valid.

**8. Same—**

A defendant does not have the right to be tried by a jury of his own race or to have the representatives of any particular race on the jury, but he is entitled to be tried by a competent jury from which the members of his race have not been excluded intentionally, arbitrarily or systematically.

**9. Same—**

Our statutes relating to the selection of jurors prescribed limitations applicable equally to all races without discrimination in respect to race, creed or color.

APPEALS by defendants from *Rousseau, J.,* at October Term, 1946, of FORSYTH.

Criminal prosecutions on four separate warrants charging the defendants, Philip Milton Koritz, Cal Roberson Jones, Margaret DeGraffenreid and Betty Keels Williams, severally, with resisting, delaying or obstructing a police officer of the City of Winston-Salem in discharging or attempting to discharge a duty of his office in violation of G. S., 14-223, consolidated and tried together as all of the alleged offenses arise out of the same transaction or the same series of transactions.

The cases were tried originally in the Municipal Court of the City of Winston-Salem and again *de novo* on appeal to the Superior Court of Forsyth County.

When the cases were called and consolidated for trial in the Superior Court, the defendants first interposed a motion to quash the warrants and to discharge the panel of petit jurors because of discrimination against the Negro race in making up the jury list from which the jurors were summoned for the term. Three of the defendants are Negroes; one is a white man. Several days were consumed in hearing this motion, with both sides offering evidence in respect of the matter.

The defendants offered evidence tending to show, according to their contention, that the number of Negroes selected for jury service out of the total number of eligible Negroes in the county was disproportionately small to the number of whites selected in the same manner, and that the use of separate tax lists for whites and Negroes was discriminatory against both races. Out of 23,450 possible eligible white jurors, only 10,367 names appear in the box; and out of 4,900 possible Negro jurors

only 255 names are in the box.    The result is discrimination against both races, so the defendants say.

The State, on the other hand, offered evidence tending to show, so it contends, that there was no studied or deliberate discrimination against either race on the part of the jury commissioners, and that the large number of whites as compared with the number of Negroes who were actually selected for jury service was not the result of any prejudice or intentional discrimination against the latter race.    Walter A. Mickle, the County-City Tax Collector, and former deputy sheriff who assisted in the actual drawing of juries from 1936 to 1946, says: "I never heard any commissioner discuss whether a man was black or white, that I remember, during the time I was in the office as Chief Deputy, at the drawing of the jury."

After hearing the evidence, the trial court made the following findings:

1. That as the defendants are being tried upon warrants, and not upon bills of indictment, the method of selecting grand juries in Forsyth County is not germane to the present motion.

2. That a fair representation of Negroes was placed in the jury box by the commissioners; and that there was no intentional discrimination in preparing the jury list either in respect of color or religion.

The court thereupon overruled the motion to quash the warrants and the jury panel.    Defendants excepted to the findings and rulings.    Exceptions Nos. 1 and 2.

Announcement was then made that each defendant would have 6 peremptory challenges, making a total of 24, and that there were only 20 regularly drawn and summoned jurors.    The court ordered that 25 talesmen be summoned, not less than 10 of whom should be Negroes. On inquiring of counsel for defendants whether they wished the talesmen drawn from the box or summoned by the sheriff from among the persons qualified to act as jurors in the county, counsel for the defendants, Mr. Avnet, replied: "In the light of our motion, I would not care to indicate; just leave that matter for your Honor."    It was agreed that a venire of 25 would be sufficient, but defendants excepted to the order.    Exception No. 3.

The jury as finally selected was composed of seven whites and five Negroes.    Six were taken from those regularly drawn and summoned for the term, and six from the special venire.    The defendants used 23 of their 24 peremptory challenges, one being in respect of a Negro on the special venire.    They still had one peremptory challenge left when the jury was completed.    The court found that the proportion of Negroes on the jury, as finally selected, was generous to that race.    Exception by the defendants.    Exception No. 4.

Verdicts: Guilty as to Philip Milton Koritz, Cal Roberson Jones and Margaret DeGraffenreid.    Not guilty as to Betty Keels Williams.

---

---

Judgments: 12 months on the roads as to Philip Milton Koritz; 10 months on the roads as to Cal Roberson Jones, and 8 months in prison as to Margaret DeGraffenreid.

The defendants appeal, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*William Reid Dalton, I. Duke Avnet, and Harold Buchman for defendants.*

STACY, C. J.   The defendants have abandoned all their exceptions, save the first four, which go to the competency of the petit jurors selected to try the consolidated cases.   When all is said and done in respect of these exceptions, we are met with the paramount fact that the jury as finally selected was satisfactory to the defendants, and they were not required to take any juror over objection.   They announced their contentment with the jury without exhausting all their peremptory challenges.   It was composed of 7 white men and 5 Negroes.

In respect of special veniremen summoned to serve as petit jurors, a challenge to the array may be interposed for cause; and, if this be overruled, challenges to the polls are still available.   *S. v. Kirksey, ante,* 445; *S. v. Levy,* 187 N. C., 581, 122 S. E., 386.   To present an exception on rulings to challenges to the polls, the appellant is required to exhaust his peremptory challenges and then undertake to challenge another juror. *Oliphant v. R. R.,* 171 N. C., 303, 88 S. E., 425.   The court's action in the matter must be hurtful and its effect unavoidable before it will be held to vitiate the trial.   *S. v. Cockman,* 60 N. C., 484; *S. v. Benton,* 19 N. C., 196.

The trial court was at pains to see that every opportunity was afforded for the selection of a fair and impartial jury.   The defendants would be entitled to no more on a new trial, and this they have already had.   *S. v. Levy,* 187 N. C., 581, 122 S. E., 386; *S. v. Sultan,* 142 N. C., 569, 54 S. E., 841; *S. v. English,* 164 N. C., 497, 80 S. E., 72; *S. v. Bohanon,* 142 N. C., 695, 55 S. E., 797.   Their right is not to select but to reject jurors.   Having been tried by twelve jurors who were unobjectionable to them, the defendants have no valid ground to urge that they have been prejudiced by the composition of the jury.   *S. v. Pritchett,* 106 N. C., 667, 11 S. E., 357; *S. v. Hensley,* 94 N. C., 1021.   "The defendant did not exhaust his peremptory challenges. . . . When such is the case, the objection to a juror who could have been rejected peremptorily is not available."   *S. v. Bohanon, supra; Oliphant v. R. R.,* 171 N. C., 303, 88 S. E., 425.

The trial court was obviously correct in holding that the composition of the grand jury could in no way affect the defendants..   They were

tried on warrants sworn out in the Municipal Court, and not on bills of indictment returned by the grand jury, as was the case in *S. v. Peoples,* 131 N. C., 784, 42 S. E., 814. No rights of theirs were passed upon by the grand jury. The question is put aside as irrelevant. The case of *Smith v. Texas,* 311 U. S., 128, 85 L. Ed., 84, strongly relied upon by the defendants, dealt with the composition of a grand jury. It is inapplicable here.

The principal point, argued by the defendants, is the manner in which the petit jurors were selected. Six regular jurors who were summoned for the term did serve on the jury, and it is these jurors of which the defendants now complain, albeit they might have been excused with or without cause. It has been held in a number of cases that mere irregularity on the part of the jury commissioners in preparing the jury list, unless obviously, designedly, or intentionally discriminatory, would not vitiate the list or afford a basis for a challenge to the array. *S. v. Daniels,* 134 N. C., 641, 46 S. E., 743; *S. v. Kirksey, ante,* 445. There is a finding on the present record, which is supported by the evidence, that no discrimination was intended or resulted from the manner in which the jury list was prepared. This suffices to sustain the ruling below, in the absence of some pronounced ill consideration. *S. v. Lord,* 225 N. C., 354, 34 S. E. (2d), 205; *S. v. Henderson,* 216 N. C., 99, 3 S. E. (2d), 357; *S. v. Bell,* 212 N. C., 20, 192 S. E., 852; *S. v. Walls,* 211 N. C., 487, 191 S. E., 232; *S. v. Cooper,* 205 N. C., 657, 172 S. E., 199; *Akins v. Texas,* 325 U. S., 398, 89 L. Ed., 1692; *Thomas v. Texas,* 212 U. S., 278, 53 L. Ed., 512.

In no event could the defendant Koritz profit from, or be hurt by, the alleged discrimination against the Negro race, as he is a member of the White race. *S. v. Sims,* 213 N. C., 590, 197 S. E., 176.

Moreover, an absolute numerical ratio or balance between the races is not required, nor even possible perhaps. "Some play must be allowed for the joints of the machine." *M. T. & K. Ry. Co. v. May,* 194 U. S., 267. The problem involves more than mere mathematics or simple arithmetic. Equality can result from disparity in numbers, just as discrimination can result from equality among unequals. Character and intelligence are common to members of both races, with varying degrees of quality, dependent upon the individual, regardless of race. Nor can they be determined or measured by statute. The standard of qualification is prescribed by law. Its application is the place of the rub. The rules of fair play are not difficult to understand. They are only difficult to practice. The end in view is to get a fair cross-section of community judgment. Hence, as local officials are in better position than outsiders to weigh the imponderables, their determination of the matter will be upheld unless too wide of the mark or "unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfair-

ness which is· at war with due process." *Akins v. Texas,* 325 U. S., 398, 89 L. Ed., 1692; *Louisville Gas Co. v. Coleman,* 277 U. S., 32.

It is the contention of the defendants, however, that our statutes on the subject contain inherent, constitutional infirmities, in that, the jury list is taken from the names of taxpayers of the county who are of good moral character and of sufficient intelligence. For this position they rely chiefly upon the recent case of *Thiel v. Southern Pacific Co.,* 328 U. S., 217, 90 L. Ed., 1181. The cited case is hardly an authority for the position taken. There, the Supreme Court of the United States was exercising a supervisory power over the administration of justice in the Federal Courts, and was not concerned with any constitutional question. To like effect is the decision in *McNabb v. United States,* 318 U. S., 332, 87 L. Ed., 819.

Nor are the cases of *Norris v. Alabama,* 294 U. S., 587, 79 L. Ed., 1074; *Smith v. Texas,* 311 U. S., 128, 85 L. Ed., 84; *Glasser v. United States,* 315 U. S., 60, 86 L. Ed., 680, and others cited by the defendants, controlling on the instant record. The present case, in its factual situation, is strikingly similar to the one presented in the case of *S. v. Walls, supra,* where a like ruling was upheld, and, on appeal to the Supreme Court of the United States, the decision was left undisturbed, the appeal being dismissed, 302 U. S., 635.

Of course, it is understood that the intentional, arbitrary and systematic exclusion of any portion of the population from jury service, grand or petit, on account of race, color or creed, is at variance with the Constitution and cannot stand. *Akins v. Texas,* 325 U. S., 398, 89 L. Ed., 1692. It is not the right of any party, however, to be tried by a jury of his own race, or to have a representative of any particular race on the jury.· It is his right to be tried by a competent jury from which members of his race have not been unlawfully excluded. *Ballard v. United States,* 67 S. C. Rep., 261, 91 L. Ed. (Adv. Op.), 195. "The law not only guarantees· the right of trial by jury, but also the right of trial by a proper jury; that is to say, a jury possessing the qualifications contemplated by law." *Hinton v. Hinton,* 196 N. C., 341, 145 S. E., 615.

The broadside challenge to the State's whole method of selecting jurors, regular, special and talesmen, calls for only a passing word. There is no mention of race, color or creed in any of the statutes on the subject, and whatever limitations are to be found therein apply equally to all races. It was said as early as *Strauder v. West Virginia,* 100 U. S., 303, 25 L. Ed., 664, that within constitutional bounds a state may confine the selection of its jurors "to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications." 31 Am. Jur., 594. The defendants boldly assert that they are immune from trial in Forsyth County so long as the present method of selecting

juries obtains therein. The conclusion is a *non sequitur* on the facts as revealed by the record. The challenge is not sustained.

A careful perusal of the record leaves us with the impression that no reversible error has been made to appear in respect of the matters of which the defendants now complain. Hence, the verdict and judgments will be upheld.

No error.