STATE v. RICHARD SCALES.

(Filed 30 June, 1955.)

**1. Criminal Law § 13: Jury § 9—**

    A motion for change of venue or for a special venire on the ground of prejudice created against defendant by publicity in the county, is addressed to the sound discretion of the trial court.

**2. Homicide § 14—**

Under an indictment for murder in the form prescribed by G.S. 15-144, the State is entitled to introduce evidence that the defendant committed the homicide in the perpetration, or attempted perpetration, of a felony, and thus make out defendant's guilt of murder in the first degree.

**3. Same: Indictment and Warrant § 18—**

Where under an indictment drawn under form prescribed by G.S. 15-144, the theory of trial is in accordance with pre-trial statements of defendant, tending to show that he killed deceased in an attempt to perpetrate rape, the defendant is in no way prejudiced by the denial of his motion for a bill of particulars. G.S. 15-143.

**4. Indictment and Warrant § 18—**

A motion for a bill of particulars is addressed to the discretion of the trial court.

**5. Criminal Law § 5a—**

The test of mental responsibility for crime is whether defendant had sufficient intelligence to distinguish right from wrong, and therefore the exclusion of testimony of a psychiatrist that defendant was a man of low mentality is not error.

**6. Homicide § 27h—Under evidence in this case the court correctly refused to submit question of guilt of less degrees of crime.**

The State's evidence tended to show that defendant went to the house in which deceased lived and found her alone with small children, that he admitted an intent to have sexual relations with her, that he said something to her about sex, and that when she became frightened and ran into the kitchen, he followed her, with further evidence that she was found lying on the kitchen floor, dead from stab wounds, with her body exposed below the waist and her underclothing rolled up and torn. Defendant introduced no evidence. *Held:* The evidence warrants the submission of the single issue of defendant's guilt of murder in the first degree or not guilty, and defendant's contention that the court should have also submitted the questions of defendant's guilt of murder in the second degree or manslaughter, is untenable.

APPEAL by defendant from *Sharp, Special Judge,* March Term, 1955, of GUILFORD (Greensboro Division).

Criminal prosecution tried upon a bill of indictment charging that the defendant Richard Scales feloniously, willfully and with malice aforethought did kill and murder Mrs. Bertha M. Cook. To this indictment the defendant entered a plea of not guilty.

The evidence on behalf of the State tends to show that shortly after 1:00 o'clock on the afternoon of 19 January, 1955, on which date the ground was covered by a heavy snow, the defendant, an employee of the Richardson Motor Company of Greensboro, was sent with a truck to pull a stalled car out of a ditch near the entrance to the

Jefferson Club on New Garden Road in Guilford County. A passing motorist had assisted the stalled motorist in getting his car out of the ditch. According to the evidence, the defendant did not return to the garage until between 2:00 and 3:00 o'clock in the afternoon at which time he reported that he couldn't find the person who had called the garage for help.

The defendant was seen by witnesses driving the truck belonging to the Richardson Motor Company between 1:00 and 2:00 o'clock that afternoon in the vicinity of the home of the deceased which is located on New Garden Road. A truck identified as one belonging to the Richardson Motor Company was seen by one of the State's witnesses between 1:45 and 2:00 o'clock that afternoon parked in front of the home of the deceased.

As a result of telephone conversations, neighbors went to the home of the deceased and, upon being admitted to the house by the five-year-old daughter of the deceased, Barbara Cook, they found another daughter, Betty, lying dead in a pool of blood in the hallway of the home. In the kitchen, witnesses found the lifeless body of Mrs. Cook. She was stretched out on her back across the floor. Her clothes were disarranged and the lower part of her body was exposed, from her waist down. Mrs. J. D. Jenkins, who was the first person to arrive at the Cook home, testified that shortly before the officers or anyone else came in she pulled Mrs. Cook's skirt down from her waist. Mrs. Cook was lying in a pool of blood and to one side there were tracks of blood which looked like a man's shoe print. There was blood spattered all over the kitchen. A complete post-mortem was made by Dr. W. W. Harvey, Coroner of Guilford County, after the body was moved to a funeral home. Dr. Harvey, however, examined the body of Mrs. Cook to some extent before it was moved from her home. He testified that when he examined the body of Mrs. Cook at the home ". . . She was lying on her back; her head was tilted a little on a piece of furniture. One leg was straight, the other was semi-flexed. Her dress and slip were about half way between her knees and her thigh. We saw evidence of numerous stab wounds, which weren't examined in detail at the home. . . . The pants were torn apart at the time I saw the body of Mrs. Cook at her home. The leg of the pants was torn apart and her underclothing was rolled up just above the thighs. Her underclothing did not cover any of her private parts. The crotch of her underclothing was torn completely in two, . . ."

The post-mortem showed no less than twelve or fifteen serious cuts and stab wounds on the body of the deceased, and Dr. Harvey testified that in his opinion the deceased came to her death as a result of the numerous stab wounds about her body.

The defendant was arrested on 20 January, 1955, upon a warrant charging him with murder. That same day, after being warned as to his rights with respect to any statement he might make, G. T. Jones, a deputy sheriff of Guilford County, said to him, "We have you for the murder of Mrs. Cook and her daughter." The defendant said, "I killed Mrs. Cook, but I didn't kill her daughter." He was then asked who killed the daughter and he said, "Lawrence Gaston." He then proceeded to tell about being sent out on New Garden Road to pull a man out who was stuck in a ditch. That he picked up Lawrence Gaston on Lawndale Drive Extension and said that Gaston talked of being in desperate need of money, something about being $40.00 behind in his rent; that he went out on New Garden Road and the car he had been sent to pull out of the ditch had gone; that they turned around and came back and stopped in front of the Cook home, and gained admission to the house on the pretense of using the telephone; that he went in and told the lady he wanted to call his office. That she informed him it was a party line; that she checked the 'phone to see if it was clear, and it was clear and that he dialed his number in town and when the man answered, he did not answer him; that Mrs. Cook got frightened and started out the door; that Lawrence Gaston got between her and the door and then Mrs. Cook and Gaston began to scuffle on back to the kitchen and Mrs. Cook picked up a butcher knife. That he (Scales) "took the butcher knife away from her and began stabbing her and stabbed her until he killed her." That the little girl came into the kitchen screaming, and Gaston said, "she knows too much, we'll have to kill her, too." He said that Gaston killed the little girl and then they left the house. He then said they brought the butcher knife with them to the truck and drove up the New Garden Road, coming to Highway 220, and there was a Scotty dog sign on the right-hand side of the road and they threw the knife out at the sign and returned to Greensboro.

After the defendant Scales made the above statements, he and Gaston were carried to Winston-Salem and put in the Forsyth County jail, around 4:00 o'clock on the afternoon of the 20th of January, 1955. The next morning, the same officer, in company with Lt. Burch, Officer Cowan, and SBI Agent Allen, went to see Scales. Deputy Sheriff Jones informed him that they had checked on Gaston's whereabouts the day before and that he had no part in it, and that they were going to release him; that they wanted to know if he had anything to say about it. He said, "Yes. He didn't have anything to do with it. I involved him in it because I thought he turned me in to the police." Gaston was released that day. This officer said, "In talking to Scales, I told him that we had checked the house, we found no motive for

robbery and that we didn't think it was robbery, and I asked him, I said, 'Did you intend to have sexual relations with Mrs. Cook?' He said, 'Yes.' I told Scales then, I says, 'Scales, how about just starting at the first and tell us the truth all the way through this thing?' He said, 'Well, I'm going to tell you the truth about it just like it happened.' " He then proceeded to tell about being sent out on the New Garden Road by the garage to a car stuck out there in the ditch, and not finding the car he went to the home of Mrs. Cook to call the garage. He again said Mrs. Cook gave him permission to use the 'phone, and she checked to see if the line was clear; that he got the garage but when the 'phone was answered he hung up; that he noticed there were "no menfolks in the house, no one but Mrs. Cook and the small children, and he began to talk to Mrs. Cook, and then he said at that time he mentioned something about sex and Mrs. Cook got excited and afraid and ran into the kitchen, and he ran into the kitchen after her, she grabbed the knife and began to scream; that he took the knife away from her and at that point he began stabbing Mrs. Cook until she fell on the floor. He said when she fell on the floor that he fell down beside Mrs. Cook, and he said that he had one leg in between Mrs. Cook's legs and the other one was on the outside of her legs in a kneeling position, and he continued to stab Mrs. Cook until she didn't holler any more, and he said at that point this child came running into the kitchen, screaming, scratching and hitting him on the back, and he said he swung a back-handed lick with the knife and only hit the child in the chest with the knife one time, and then he said he got up and took the knife with him and left." He again stated that he threw the butcher knife out at the Scotty dog sign, and then he left and "went back to the garage and he drove back to the wash pit, and there he washed his hands, washed the blood off his hands and cleaned up, and he said he cleaned his clothes with some cleaning stuff that they use to wash motors with. He said that was what he cleaned his clothes with." The officers spent several hours raking in the snow in an effort to find the butcher knife at the place where the defendant said he threw it, but they failed to find it. The next day, in company with these same officers, the defendant directed them to Haywood Street. He pointed out a place right back of his house where he said he threw the butcher knife, and it was located later in a hedge behind his house within a few feet of where he said he put it. This butcher knife was identified by the husband of Mrs. Cook as being one he had purchased in Tennessee about a year before.

According to the record, the defendant is six feet three inches tall and weighs approximately 200 pounds. The victim was 31 years of age and weighed 115 pounds.

The defendant's evidence tends to show that he came to work between 8:30 and 9:00 o'clock the morning of 19 January, 1955; that he was seen taking one drink during the morning; that he worked hard putting chains on cars and made several trips that morning for the garage, driving the same pick-up truck that he later drove out on New Garden Road; that he appeared normal during the morning and after he returned to the garage in the afternoon. He had worked for the Richardson Motor Company off and on for a couple of years, the last time for about six months. The defendant did not testify in his own behalf.

Verdict: Guilty of murder in the first degree as charged in the bill of indictment.

Judgment: Death by inhaling lethal gas.

Defendant appeals, assigning error.

*Attorney General McMullan and Asst. Attorney General Bruton, for the State.*

*C. Clifford Frazier, Jr. and Stedman Hines, for defendant.*

DENNY, J. The defendant's second assignment of error is based on the denial of his motion for a change of venue or for a special venire from outside Guilford County. He contends that the publicity this alleged crime had received in the newspapers, over the radio and television stations in Greensboro and High Point, had prejudiced the minds of the people of Guilford County against him to such an extent that his motion should have been allowed.

A motion for a change of venue or for a special venire from another county, upon the ground that the minds of the residents in the county in which the crime was committed had been influenced against the defendant, is addressed to the sound discretion of the trial court. *S. v. Godwin,* 216 N.C. 49, 3 S.E. 2d 347; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737; *S. v. Shipman,* 202 N.C. 518, 163 S.E. 657; *S. v. Wiseman,* 178 N.C. 784, 101 S.E. 629; *S. v. Plyler,* 153 N.C. 630, 69 S.E. 269. Therefore, this assignment of error is overruled.

The defendant assigns as error the refusal of the court below to grant his motion for a bill of particulars.

The defendant was charged with murder in the first degree in the manner and form prescribed by G.S. 15-144. Under such an indictment the State is entitled to introduce evidence that the defendant committed the homicide in the perpetration of, or attempt to perpetrate rape or other felony, and it is sufficient to sustain a charge based upon evidence relative to murder committed in the perpetration of rape, attempt to commit rape or other felony. *S. v. Grayson,* 239 N.C. 453,

80 S.E. 2d 387; *S. v. Mays,* 225 N.C. 486, 35 S.E. 2d 494; *S. v. Fogle-man,* 204 N.C. 401, 168 S.E. 536.

It is provided in G.S. 15-143, "In all indictments when further information not required to be set out therein is desirable for the better defense of the accused, the court, upon motion, may in its discretion, require the solicitor to furnish a bill of particulars of such matters."

In our opinion the defendant has in no way been prejudiced by the denial of his motion since his statements to the officers as to how, when, and under what circumstances he killed the deceased were in accord with the theory of the trial in the court below. There was no variance between the *allegata* and the *probata. S. v. Grayson, supra.* Moreover, the statute which provides that a motion for a bill of particulars may be granted leaves it in the discretion of the trial court as to whether or not such motion should be granted. *S. v. Wadford,* 194 N.C. 336, 139 S.E. 608. The ruling of the court below will be sustained.

Assignments of error Nos. 17 through 23A are directed to the refusal of the trial court to permit an expert psychiatrist and witness for the defendant to testify to the effect that the defendant was a man of low mentality. Low mentality does not mean that a man is insane or unable to distinguish between right and wrong. Furthermore, the defendant did not plead insanity or mental irresponsibility. Neither did he offer any evidence to the effect that he did not know the difference between right and wrong at the time he committed the alleged crime, which is the test of responsibility of a person charged with a criminal offense. *S. v. Shackleford,* 232 N.C. 299, 59 S.E. 2d 825.

In *S. v. Jenkins,* 208 N.C. 740, 182 S.E. 324, *Stacy, C.J.,* in considering a similar assignment of error, said: "The only testimony offered by the defendant to support his plea of insanity was that of several witnesses who would have testified, if permitted to do so, that the defendant was a man of low mentality. The exclusion of this evidence is the principal question presented by the appeal. There was no error in its exclusion. *S. v. Vernon, ante,* 340. Low mentality is not the test of insanity. *S. v. Spivey,* 132 N.C. 989, 43 S.E. 475. He who knows the right and still the wrong pursues is amenable to the criminal law. *S. v. Potts,* 100 N.C. 457, 6 S.E. 657. We are aware of the criticism of this standard by some psychiatrists and others. Nevertheless, the critics have offered nothing better." These assignments of error are overruled.

Assignment of error No. 25 is based on the defendant's exception to the failure of the court to charge the jury as to murder in the second degree and manslaughter.

The defendant contends that it is only where all the evidence tends to show that the homicide was committed in the perpetration or

attempted perpetration of a felony that the court may instruct the jury to return a verdict of guilty of murder in the first degree, or not guilty, citing *S. v. Perry*, 209 N.C. 604, 184 S.E. 545, in which case there was no evidence whatever to support the view that the homicide was committed in the perpetration or attempt to perpetrate a felony as described in G.S. 14-17.

The defendant likewise contends there is no evidence in this case to support the view that the murder was committed in the perpetration or attempt to perpetrate rape. He admitted an intent to have sexual relations with the deceased, and that he said something to her about sex, but contends there is no evidence whatever to show that he intended to gratify his passion upon the deceased at all events, no matter what resistance she might offer, or that he attempted to do so. We do not so interpret the record. When he said something about sex to the deceased, she became frightened and ran into the kitchen of her home. He did not desist, but followed her. Why did he follow her? His admitted purpose was to have sexual relations with her, and the manner in which her underclothing was torn and rolled up above her thighs and her body left nude below the waist, tends to show an attempt to rape the deceased and such evidence was sufficient to support the charge as given. The fact that this wife and mother put up such a terrific struggle and sacrificed her life rather than yield her body to the embrace of her assailant, and thereby prevented him from accomplishing his purpose, is not susceptible of the construction the defendant would have us put upon it when considered in light of all the evidence adduced in the trial below.

We have carefully examined the remaining exceptions and assignments of error and in our opinion they present no prejudicial error.

The defendant has been represented by able counsel who have presented their cause with commendable zeal. But the jury accepted the State's theory of the case and the evidence supports the verdict. The trial was in all respects fairly conducted by a competent and experienced judge, and in our opinion there is no legal ground to complain of the result.

No error.